## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHRISTINE MORRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 10-414-LPS-CJB |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

### MEMORANDUM ORDER

Pending before the Court in this matter is a Motion for Attorney's Fees (the "motion")

filed pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), by Plaintiff

Christine Morris ("Plaintiff"). (D.I. 33) For the reasons that follow, the Court GRANTS

Plaintiff's motion, but reduces the number of compensable hours regarding the motion from 59.9

hours to 48.6 hours. Accordingly, Plaintiff shall be awarded attorney's fees in the amount of

$8,262.00 and costs in the amount of $350.00.

## I.    BACKGROUND[1]

On June 25, 2004, Plaintiff applied for disability insurance benefits ("DIB") under Title II

of the Social Security Act, 42 U.S.C. §§ 401–433. (D.I. 6 & 7 ("Transcript" and hereinafter

"Tr.") at 124–27; D.I. 15 at 1) Plaintiff alleged disability since December 31, 2002, due to pain

in her arms, back, legs and neck and due to vision problems. (Tr. at 125, 136) After a hearing,

on August 15, 2007, an Administrative Law Judge ("ALJ") issued a decision confirming the

prior denial of benefits to Plaintiff. (Tr. at 67–80)

---

[1]    A detailed account of the procedural history and factual background regarding this
matter can be found in the Court's Report and Recommendation dated March 9, 2012. (D.I. 31)

On August 23, 2007, Plaintiff requested a review of the ALJ's decision by the Appeals

Council. (Tr. at 66)  On October 31, 2008, the Appeals Council vacated the ALJ's hearing

decision and remanded the case with instructions to the ALJ to (1) further consider the claimant's

manipulative limitations; (2) consider an opinion from Plaintiff's treating physician, Dr. Frank

Falco; and (3) incorporate a new claim for benefits that Plaintiff had filed in August 2007.  (Tr. at

119–21; D.I. 15 at 1)  On August 13, 2009, the ALJ held another hearing (Tr. at 1358–86), and

on October 21, 2009, the ALJ again denied Plaintiff's claim (Tr. at 24–56).  On April 6, 2010,

the Appeals Council denied Plaintiff's request for review (Tr. at 10–13), and therefore the ALJ's

October 21, 2009 decision became the final decision of the Commissioner (Tr. at 10).

On May 18, 2010, Plaintiff filed a Complaint in this Court seeking judicial review of the

ALJ's October 21, 2009 decision. (D.I. 1)  The parties then filed cross-motions for summary

judgment. (D.I. 14, 18)  On August 29, 2011, this case was referred to the Court by Judge

Leonard P. Stark to hear and resolve all pretrial matters. (D.I. 29)  On March 9, 2012, the Court

issued a Report and Recommendation, which recommended that the ALJ's decision be vacated

and the case be remanded to the ALJ.  (D.I. 31)[2]  By Order dated April 3, 2012, Judge Stark

adopted the Report and Recommendation. (D.I. 32)

On July 3, 2012, Plaintiff filed the instant motion. (D.I. 33)  Briefing was completed on

---

[2]    More specifically, the Court recommended that this matter be remanded to the
ALJ in light of the ALJ's failure to: (1) explicitly apply the applicable regulations regarding the
weight to be given to treating physician Dr. Falco's opinion; (2) provide a detailed explanation
for the conclusion that Dr. Falco's opinion deserved little weight; (3) provide adequate
explanations regarding the decision to assign certain weights to the opinions of non-treating
physicians; and (4) appropriately analyze the extent of Plaintiff's reaching limitations and the
impact they would have on Plaintiff's ability to work. (D.I. 31)

July 26, 2012. (D.I. 33, 34, 35)  Plaintiff's motion is therefore ripe for resolution.[3]

## II.   STANDARD OF REVIEW

The purpose of the EAJA is "'to ensure that persons will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved in the vindication of their rights . . . .'" *Johnson v. Gonzales*, 416 F.3d 205, 208 (3d Cir. 2005) (quoting *Clark v. INS*, 904 F.2d 172, 178 (3d Cir. 1990)).  Therefore, under the EAJA, "a prevailing party in a litigation against the government shall be awarded 'fees and other expenses . . . incurred by that party . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.'" *Williams v. Astrue*, 600 F.3d 299, 301 (3d Cir. 2009) (quoting 28 U.S.C. § 2412(d)(1)(A)).  The EAJA permits attorney's fee awards only to the extent they are "reasonable." 28 U.S.C. § 2412(d)(2)(A); *see also Ongay v. Astrue*, No. 09-0610, 2011 WL 2457692, at *1 (D. Del. June 20, 2011).  The party seeking attorney's fees pursuant to the EAJA bears the burden of proving that its fee request is reasonable. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990); *see also Smith v. Astrue*, 843 F. Supp. 2d 486, 489–90 (D. Del. 2012).

## III.   DISCUSSION

In her motion, Plaintiff seeks an award of attorney's fees in the amount of $9,333.00, representing 54.9 hours of work at a rate of $170.00 per hour.[4]  (D.I. 33-1)  Plaintiff also seeks

---

[3]    In her opening brief in support of the motion, Plaintiff indicated that her counsel would continue to negotiate with Defendant in an attempt to resolve this fee dispute, and, if settlement was reached, would notify the Court by filing a stipulation. (D.I. 33 at ¶ 7)  No such stipulation has been filed, however.

[4]    The EAJA allows reimbursement of attorney's fees up to "$125 per hour unless the court determines that an increase in the cost of living or a special factor . . . justifies a higher

costs in the amount of $350.00, to which the Commissioner of Social Security (the "Commissioner" or "Defendant") has not objected. (D.I. 33 at 7)  In support of the motion, Plaintiff has submitted a Declaration from Gary Linarducci, Esquire ("Declaration"), her counsel in this matter, setting out: (1) the dates on which he and another attorney (David Chermol, Esquire) worked on this matter; (2) the activity undertaken on each such date; and (3) the total number of hours expended for the work performed on that date.[5]  (D.I. 33-1)

The Commissioner also has not disputed that Plaintiff is entitled to attorney's fees under the EAJA, and accordingly does not argue that the government's position was substantially justified or that special circumstances exist that would render an attorney's fee award unjust. (*See* D.I. 34)  Rather, the Commissioner contends that the amount of Plaintiff's requested fees is unreasonable, in that, for various reasons, the 59.9 hours of work relied upon in Plaintiff's fee request is excessive. (*Id.*)  Instead, the Commissioner argues that the Court should award attorney's fees in an amount of no more than $4,505.00, representing 26.50 hours of attorney

---

fee." 28 U.S.C. § 2412(d)(2)(A)(ii).  Plaintiff here seeks to increase the authorized rate, based on a cost of living increase, to $170.00 per hour. (D.I. 33 at ¶ 4)  Defendant does not object to the hourly rate of $170.00, nor does it dispute the reasonableness of the methodology Plaintiff used to calculate this hourly rate.  The Court, in line with prior decisions of this Court, finds that the cost of living adjustment is appropriate and that $170.00 represents a reasonable hourly rate. *See, e.g.*, *Smith*, 843 F. Supp. 2d at 490 (approving hourly rate of $173.00); *Ongay*, 2011 WL 2457692, at *2 (same, after plaintiff used a similar methodology to that used here in order to arrive at the rate).

[5]      Although Plaintiff states that 59.9 total hours were expended in this matter up through the submission of its opening brief as to this motion, Plaintiff is seeking compensation for only 54.9 hours "in an exercise of billing discretion." (D.I. 33 at 3 n.2; D.I. 33-1 at 3 n.1) Additionally, although Plaintiff notes that her counsel "spent in excess of 10 hours writing and researching" the reply brief regarding this motion, Plaintiff "seeks no additional EAJA compensation for" the time spent working on the reply brief and does not include those hours in the 59.9 hour total. (D.I. 35 at 3)

work at a rate of $170.00 per hour.  (D.I. 34 at 1 & Attachment A)

### A.  Reasonableness of Plaintiff's Requested Fee Award

As previously noted, generally the party seeking attorney's fees pursuant to the EAJA bears the burden of proving the reasonableness of its fee request. *Rode*, 892 F.2d at 1183; *Smith*, 843 F. Supp. 2d at 489–90. It must submit to the court "an itemized statement from any attorney . . . representing . . . the party stating the actual time expended and the rate at which fees and other expenses were computed." 28 U.S.C. § 2412(d)(1)(B); *see also Smith*, 843 F. Supp. 2d at 490. In submitting its request for a fee award, the moving party must exercise "billing judgment;" in other words, the party must "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

A party opposing a fee award then bears the burden to challenge the reasonableness of the requested fee in the form of a brief or affidavit that includes "sufficient specificity to give fee applicants notice" of the objections. *Rode*, 892 F.2d at 1183; *see also Smith*, 843 F. Supp. 2d at 490. A court may only award an amount less than the requested fee if "'the opposing party makes specific objections to the fees requested.'" *Burt v. Astrue*, No. 08-1427, 2011 WL 1325607, at *2 (E.D. Pa. Apr. 7, 2011) (quoting *U.S. v. Eleven Vehicles, Their Equip. and Accessories*, 200 F.3d 203, 211 (3d Cir. 2000)). Indeed, a fee award may not be "decreas[ed] . . . based on factors not raised at all by the adverse party." *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 720 (3d Cir. 1989); *see also Smith*, 843 F. Supp. 2d at 490. However, "[o]nce the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections." *Rode*, 892 F.2d at 1183; *see also Smith*, 843 F. Supp. 2d at 490.

The district court must "'conduct an extensive analysis and inquiry before determining the amount of fees.'" *Walton v. Massanari*, 177 F. Supp. 2d 359, 362 (E.D. Pa. 2001) (quoting *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 728 (3d Cir. 2001)). Ultimately, the court must exclude any hours from a fee award that were not "'reasonably expended.'" *Walton*, 177 F. Supp. 2d at 362 (quoting *Hensley*, 461 U.S. at 434); *see also Ongay*, 2011 WL 2457692, at *2.

Here, Plaintiff has submitted an itemized statement from her counsel reflecting the hours expended on this matter, (D.I. 33-1), to which the Commissioner has objected on various specific grounds, (D.I. 34 & Attachment A). The Court will therefore analyze each of the objections raised by the Commissioner in turn.[6]

### 1.   Review of the Record

The Commissioner first requests a reduction in the hours billed on certain dates for Plaintiff's counsel's review of the administrative record. On August 5, 2010, Plaintiff's counsel billed 0.5 hours for review of the transcript for completeness. (D.I. 33-1 at 1) On November 6, 2010, November 10, 2010, and November 11, 2010, Plaintiff's counsel billed a total of 19.3 hours for tasks including, *inter alia*, "[r]ecord review." (D.I. 33-1 at 2)[7] The Commissioner

---

[6]     At times, the Commissioner appears to make a more general argument that Plaintiff's requested fee award should be reduced given the "routine" nature of the case and Plaintiff's counsel's expertise in the field. (*See* D.I. 34 at 3–5) The Court declines to consider these general objections divorced from an analysis of a particular attorney task or series of tasks at issue. *See Ongay*, 2011 WL 2457692, at *2 n.3 ("Defendants object that the . . . amount sought is unreasonable in light of Plaintiff's counsel's expertise and the 'routine' nature of this dispute. . . . The Court, however, need not address such generalized objections.") (citing cases); *see also Smith*, 843 F. Supp. 2d at 490 (same). To the extent these arguments are otherwise raised as part of specific objections to items billed on particular dates, the Court will consider them in that context.

[7]     For these entries, Plaintiff's counsel grouped "record review" with other tasks consisting of issue identification, outline, brief-writing, and legal research. (D.I. 33-1 at 2)

contends that these hours are excessive because Mr. Linarducci should be familiar with the administrative record in the case, in that he represented Plaintiff at the administrative level in this matter. (D.I. 34 at 11, 12)  The Commissioner also notes that the Declaration states that Mr. Chermol worked with Mr. Linarducci on the matter at the District Court level, but does not specify which attorney performed which task on the case.  (D.I. 34 at 5–6, 12)[8]

The Court concludes that Plaintiff's counsel's time spent reviewing the record in this case is reasonable.  First, the transcript in this case is very, very large—spanning over 1,300 pages. (D.I. 6 & 7)  Courts have repeatedly considered the size of the transcript as a relevant factor in evaluating the reasonableness of requested EAJA fee awards, and have noted that records far less substantial than this were of a significant size.[9]  Indeed, at various points in this case, the Commissioner noted the "voluminous" state of the administrative record, (D.I. 19 at 3), and cited

---

[8]    In fact, as the Commissioner points out in his opposition to Plaintiff's motion (D.I. 34 at 2 n.2), Mr. Chermol's name does not appear on the docket for this matter or on any of Plaintiff's filings.  The only reference to Mr. Chermol appears to be the statement in the Declaration by Mr. Linarducci that he worked on the appeal "with David F. Chermol, Esquire, a former Special Assistant United States Attorney for Social Security . . . ." (D.I. 33-1 at 1)

[9]    See, e.g., Costa v. Comm'r of Soc. Sec. Admin., 690 F.3d 1132, 1136 (9th Cir. 2012) (stating that an inquiry into the reasonableness of a requested EAJA fee award "will always depend on case-specific factors including . . . the size of the record"); Chonko v. Comm'r of Soc. Sec. Admin., 624 F. Supp. 2d 357, 361 (D.N.J. 2008) (rejecting Commissioner's argument that plaintiff's counsel spent an excessive amount of time reviewing the administrative record because it is a "time consuming activit[y]; reviewing the full administrative transcript could easily take a day's work"); Colegrove v. Barnhart, 435 F. Supp. 2d 218, 220 (W.D.N.Y. 2006) (finding hours expended by counsel mostly reasonable, based in part upon "the size of the administrative transcript (over 1,100 pages)"); Palmer v. Barnhart, 227 F. Supp. 2d 975, 978 (N.D. Ill. 2002) (finding a total of 122 hours (including 48.2 hours for district court work) reasonable as "this was not the ordinary disability case" in part because "the record was rather voluminous at 459 pages"); Gibson-Jones v. Apfel, 995 F. Supp. 825, 827 (N.D. Ill. 1998) (finding reasonable a total of 162.25 hours for district court and appellate work "[g]iven the size of the administrative record, which contained over four hundred pages of medical records, and the fact specific nature of the case").

the large size of that record as a reason supportive of its own requests for accommodation to the case schedule.[10]

Second, although the Commissioner contends that time expended on review of the record is excessive given Plaintiff's counsel's representation of Plaintiff at the administrative level, such representation does not compel an automatic reduction in fees for record review. The United States District Court for the Eastern District of Pennsylvania ("Eastern District of Pennsylvania") rejected just such an argument in *Highsmith v. Barnhart*, No. 04-801, 2006 WL 1582337 (E.D. Pa. June 7, 2006). In that case, the Commissioner asserted that plaintiff's counsel should not be awarded fees for time needed to review the plaintiff's file prior to filing a complaint in district court, since counsel had represented the plaintiff at the administrative level. *Id.* at *4. The *Highsmith* Court disagreed, noting that "[w]hile it is true that counsel's prior involvement in the case may reduce the time needed to file the complaint, the Commissioner's argument that counsel remains intimately familiar with the case at all times assumes too much." *Id.*; *see also Bentley v. Astrue*, No. 3:10-CV-00032-L (BF) ECF, 2011 WL 2923970, at *2 (N.D. Tex. June 15, 2011) ("Counsel would have been remiss had he not reviewed the entire 500 page record

---

[10]     For example, during an August 12, 2010 status teleconference, the Commissioner requested an extended briefing schedule, citing the fact that the transcript of the administrative record was "over 1300 pages . . . [a] big one." (D.I. 11 at 5:8–15)  Later, in requesting additional time to file its summary judgment brief, the Commissioner noted that "Defendant requires further time to review the agency file and the issues raised by Plaintiff."  (D.I. 16 at 1)  Thereafter, the Commissioner moved for permission to submit an opening brief that exceeded forty pages, a length more than double that permitted by local rules, *see* D. Del. LR 7.1.3(a)(4), by explaining that the additional pages were "necessary in order to summarize the evidence in this 1386 page record" and to respond to Plaintiff's claims.  (D.I. 17 at 1)

thoroughly, despite his representation of Plaintiff at the administrative level.").[11]

As in *Highsmith*, here the Court finds that the need to spend significant time reviewing the record is not diminished, despite Mr. Linarducci's representation of Plaintiff at the administrative level. Plaintiff's counsel undoubtedly represents multiple claimants at any given time. For example, in the Declaration, Mr. Linarducci notes that he has "represented hundreds of claimants both before the Agency and in federal court," and in November 2010, he filed a motion for an extension of time in this case due to a "recent increase in workload." (D.I. 33-1 at 1; D.I. 13 at 1) Amidst work on various Social Security disability cases, counsel cannot be expected to have at all times front of mind the content of the respective administrative transcripts in those matters. Especially in cases with records as large as this one, it is reasonable to expect significant time will be needed for counsel to re-familiarize himself with and refer back to that record.

Accordingly, the Court finds that Plaintiff's counsel did not spend an unreasonable amount of time reviewing such a large transcript. Plaintiff's counsel's August 5, 2010 review of the 1,386 page transcript "for completeness," which took 0.5 hours, is clearly not excessive. Moreover, Plaintiff's counsel's time entries in November 2010 for "record review," while simultaneously preparing an outline and writing the opening brief, do not strike the Court as

---

[11]    Of course, courts do allow for additional time to be spent reviewing the record in cases where counsel did not represent the plaintiff at the administrative level. *See, e.g., Harris v. Barnhart*, 259 F. Supp. 2d 775, 783 (E.D. Wis. 2003) (rejecting the Commissioner's argument that the requested fee was excessive in part because "[c]ounsel did not represent plaintiff at the administrative level, so he was required to review and spot issues in an unfamiliar record"). It does not automatically follow, however, that it is unreasonable for counsel who *did* represent the plaintiff at the administrative level to have sufficient time to re-review that record at the district court level.

warranting a fee reduction.[12]  The preparation of an outline and the drafting of a motion for summary judgment are fact-intensive tasks that undoubtedly require constant referrals back to the administrative record.  (*See* D.I. 15 (repeatedly citing to the record)).  This is true regardless of whether Mr. Linarducci or Mr. Chermol performed the record reviews for these time entries, in no small part due to the size and complexity of this record.

For these reasons, the Court will not reduce any of Plaintiff's counsel's time relating to review of the administrative record.

### 2.   Brief Writing and Legal Research Regarding Opening Brief

The Commissioner next objects to the amount of time Plaintiff's counsel spent from November 10 through November 16, 2010 regarding work on Plaintiff's opening brief in support of her motion for summary judgment.  (D.I. 34 at 9–12)  On five days in that one-week period, Plaintiff's counsel billed a total of 28.6 hours for legal research, writing, editing, proofing, and finalizing the brief.[13]  (D.I. 33-1 at 2)  The Commissioner argues, for three primary reasons, that these hours should be reduced to a total of 13.1 hours.  The Court will address each of these reasons in turn.

### a.   Itemization of hours billed

The Commissioner first argues that Plaintiff's counsel has failed to provide "an [a]ccurate and [s]pecific [i]temization" of the hours expended on these tasks.  (D.I. 34 at 5)  The Commissioner asserts this is so, in part because (1) "the activities listed in the Declaration are

---

[12]      The Court will address additional objections to these entries in Section III.A.2.

[13]      As previously noted, with respect to the entries on November 10 and 11, 2010, time billed for work on this motion was grouped with time spent on "record review," no doubt due to the need to consult the record while writing and editing the brief. (D.I. 33-1)

collected together in large blocks of time and inadequately described by general statements such as 'Record Review, Issue Identification, [O]utline;' 'Record Review, Brief-writing, Legal Research;' 'Brief-writing, Legal Research;' and 'Editing, Proofing, Finalizing'"; and (2) the entries in the Declaration fail to identify which attorney (Mr. Linarducci or Mr. Chermol) performed which tasks. (D.I. 34 at 5 n.4, 6–7, 9)

The Court declines to reduce the fees requested in light of the way they are itemized. The tasks grouped together here (such as legal research, brief writing, and record review) are frequently completed in conjunction with one another, often in a manner that can make specific time allocations for each difficult to cull out. It is thus understandable why an attorney may conduct legal research and review the record while writing a brief, and might record the time spent on those tasks together. *See, e.g., Chonko v. Comm'r of Soc. Sec. Admin.*, 624 F. Supp. 2d 357, 361 & n.3 (D.N.J. 2008) (holding that time itemizations that group together tasks such as legal research and brief writing are permissible because "[l]egal research and writing are often performed concurrently, making a precise allocation of time between them impossible"); *see also Hensley*, 461 U.S. at 437 n.12 (noting that "[p]laintiff's counsel . . . is not required to record in great detail how each minute of his time was expended" so long as the "general subject matter of his time expenditures" was set forth); *McHaffie v. Astrue*, No. C11-5924-RLS-JPD, 2012 WL 6789754, at *2–3 (W.D. Wash. Dec. 3, 2012) (approving fee request, which provided billed time regarding drafting of opening brief in blocks, along with a declaration stating that these blocks related to work on various briefing-related tasks that required "regular switching between the[] tasks").

The Court recognizes those cases cited by the Commissioner for the proposition that,

11

when a fee applicant bases her request on a record of large blocks of time supported by only generalized descriptions of attorney activity, this may be an inadequate basis for a Court to properly review the request. (D.I. 34 at 6 (citing *Baldridge v. Nicholson*, 19 Vet. App. 227, 235 (Vet. App. 2005); *Garcia v. Shinseki*, No. 07-1117 (E), 2010 WL 1462543, at *2 (Vet. App. Apr. 14, 2010)) The Court agrees that in some circumstances, this type of block billing (particularly if it lumps together unrelated tasks or tasks that are not clearly described) may not be sufficient to bolster the reasonableness of a fee request. In this case, however, the context associated with these entries provide a sufficiently clear record for the Court to review. The entries indicate not only the type of work completed (i.e., legal research or brief writing), but also the case-related event to which this work specifically related (the submission of Plaintiff's opening brief in support of her summary judgment motion).

The Commissioner also faults Plaintiff's billing entries for failing to identify which attorney (Mr. Linarducci or Mr. Chermol) performed which tasks. (D.I. 34 at 5 n.4, 6–7, 9) The Court agrees that it would have been preferable for this distinction to have been made clear in the time entries. However, this Court has held that when the fee petition itself does not suggest duplicative billing, counsel's failure to identify which attorney performed specific work does not require the Court to reduce attorney's fees. *Smith*, 843 F. Supp. 2d at 490 (rejecting such an argument because "where only 55.15 hours were expended altogether, the government provides no convincing basis to find any unnecessary duplication of effort"); *Ongay*, 2011 WL 2457692, at *3–4 (rejecting such an argument because "the record here simply does not suggest duplicative billing," but reducing plaintiff's counsel's requested total hours on other grounds). As is further set out in this Memorandum Order, the Court generally does not find that the hours listed in the

12

Declaration are excessive or suggest duplicate billing. Therefore, the failure to state whether Mr. Linarducci or Mr. Chermol performed a specific task listed in the Declaration, on this record, does not move the Court to reduce the fees requested.

### b.    Use of previously-cited legal authorities

Second, the Commissioner argues that a large number of the citations to legal authorities in Plaintiff's opening brief have been previously used by Plaintiff's counsel in briefs filed with this Court in other Social Security disability cases. (D.I. 34 at 9 & ex. 1–5) The Commissioner asserts that the efficiencies involved in re-using such citations suggests that 28.6 hours was an excessive amount of time spent in preparing Plaintiff's opening brief. (*Id.* at 9)

Courts in this Circuit have noted that when many legal citations in a brief appeared in prior briefs submitted by counsel, and when counsel's billing entries also indicate that a significant amount of time was spent on legal research, this can suggest that a reduction in the requested fee award is appropriate. *See Ongay*, 2011 WL 2457692, at *3 (citing as a reason for reducing plaintiff's counsel's time spent drafting the opening brief from 26.5 hours to 15 hours the fact that "[c]ounsel's billing entries also indicate a significant [amount of] time spent completing legal research, but much of the legal citations ultimately used in the moving brief appear in counsel's other briefs"); *see also Williams v. Comm'r of Soc. Sec.*, No. 10-1263, 2011 WL 5855041, at *4 (W.D. Pa. Nov. 21, 2011). On the other hand, courts have also noted that an attorney's re-employment of legal citations used in previous briefing may not necessarily militate in favor of a reduction of a fee award. In *Burt v. Astrue*, No. 08-1427, 2011 WL 1325607 (E.D. Pa. Apr. 7, 2011), for example, the Eastern District of Pennsylvania held that although 9 pages of plaintiff's counsel's brief were copied verbatim from briefs filed in other Social Security cases,

this did not "warrant[] any fee deduction for several reasons," including the following:

> First, the duplicated sections were simply cut-and-paste versions of developed and well-settled law. Almost any efficient and experienced attorney takes advantage of previously-written statements of law or standards of review when the law has been neither superseded nor substantively altered. . . . Second, the brief clearly reflects counsel's significant effort in scouring the administrative record to provide detailed factual support on six separate legal issues, highlighting alleged deficiencies in the administrative decision. While the legal issues themselves were not necessarily complex, the identification of issues under the relevant principles and operative facts required counsel's knowledge and experience—a point which the Commissioner does not dispute. . . . Finally, even subtracting the nine duplicated pages from the total, Plaintiff's counsel provided at least twenty-one new pages of briefing, meaning that he spent just over one hour per page. Under the standards within the Third Circuit, such time is clearly not excessive or unreasonable.

*Id.* at *4.

The Court finds the *Burt* Court's reasoning persuasive and largely applicable to these facts. Here, Plaintiff's counsel submitted a 19-page opening brief in support of its motion for summary judgment.[14] Of those 19 pages, roughly 3 to 4 pages contained legal citations that have been used by Plaintiff's counsel in prior briefs submitted to this Court regarding similar legal issues. (*Compare* D.I. 15, *with* D.I. 34, ex. 2–5) However, the remaining pages of the brief consisted of the application of those citations to the specific facts of this case—facts that, as the Court has noted, were part of a nearly decade-long administrative record. The brief contains over 180 separate citations to portions of that transcript, referencing medical records produced by a significant number of physicians who had treated Plaintiff over time.

Legal citations in any brief are important. However, to the extent those citations set out

---

[14]    The final page of the brief contains only the Conclusion and is not a full page of text. (D.I. 15 at 19)

the state of well-settled law in certain areas (as they did here), it is the way that those citations are intertwined with the individual facts of record that can make a brief like Plaintiff's opening brief particularly helpful to a court. (*See* D.I. 35 at 1 ("Plaintiff's counsel worked extremely hard to synthesize th[e] enormous transcript along with the . . . legal errors committed by [the] ALJ . . . and thereby managed to submit a tight and efficient opening brief of only 19 pages . . . .")) Here, the 14 to 15 pages of Plaintiff's opening brief that did not include previously-used legal citations effectively applied numerous and at times complicated facts to the relevant law. This suggests to the Court that, in the main, the hours allocated by Plaintiff's counsel to preparing the brief were not excessive.

However, the Court recognizes the Commissioner's point that, to the extent that "legal research" is cited in the Declaration as a task that required billed time, the time allocated for that task should reasonably have been minimal. The Declaration does not specify how many hours were spent by Plaintiff's counsel on legal research alone, and so it is difficult to know how much of the 28.6 hours at issue were utilized for that purpose. However, on four of the five dates at issue (November 10, 11, 12 and 13, 2010), "Legal Research" is a component of the billed activity for that date—suggesting that at least some meaningful portion of the hours billed for each of those days were related to this task. (D.I. 33-1 at 2) In comparing the legal citations in the opening brief here with those in other cases handled by Plaintiff's counsel, it is clear that very few of those citations were original to this brief, either as to their inclusion in the brief or (with regard to citations to case law) the order in which they were cited.

Taking all of these facts together, the Court concludes that (1) a reduction to the 28.6 hour total is warranted to account for the relatively limited nature of legal research that was

reasonably necessary for the opening brief; but (2) this reduction should be limited, due to the

Court's conclusion that the bulk of the brief writing required significant time spent with a lengthy

administrative record. As a result, the Court concludes that five hours should be deducted from

the 28.6 hour total.

### c.   Whether this matter was a "routine" case

The Commissioner's third argument with regard to the opening brief is that this was a

"routine" Social Security disability case. The Commissioner therefore argues that the brief did

not raise novel legal issues and should not have necessitated 28.6 hours to complete. (D.I. 34 at

3, 9–10) For her part, Plaintiff does acknowledge that the hours her counsel spent on this case

were "larger than normal," but explains that this was so for several reasons, including that (1) the

"transcript in this case is absolutely massive, easily four times the size of a normal disability case

transcript"; (2) "the case had a comparatively complicated procedural history due to a prior

remand"; (3) "the government filed an opening brief in this case that was more than double the

length permitted by local rules" and (4) "the government file[d] an additional [sur-reply] brief in

this [case] beyond what is normally done." (D.I. 33 at ¶ 5)

The Court agrees with Plaintiff that, even though the legal issues at play in this litigation

(such as whether the ALJ properly weighed the medical opinion evidence, properly determined

Plaintiff's Residual Functional Capacity or properly framed a hypothetical question to the

Vocational Expert) were not complex, other aspects of the case were far from "routine." As

already discussed above, the large administrative record is certainly not of a "routine" size. The

girth of that record underscores that this case was particularly fact-intensive, with a circuitous

procedural history, requiring a rigorous review of the law and the record in order to properly

16

confront the issues involved. Such a conclusion is also supported by the size of the Court's

54-page Report and Recommendation, which recommended that the case be remanded. *Cf.*

*Dominguese v. Barnhart*, No. 99-C-0596, 2002 WL 32318281, at *6 (E.D. Wis. July 12, 2002)

(stating that "this case was complicated, as my twenty-three-page decision and order reversing

and remanding the case demonstrates"). It is further bolstered by the size of the Commissioner's

47-page brief filed in opposition to Plaintiff's motion for summary judgment and in support of its

own cross-motion for summary judgment (the "opposition brief"). (D.I. 19) It is difficult to refer

to a case as "routine" when it involved as many facts, and required as detailed and lengthy a

treatment, as this case did.

The Court's conclusion is further supported by relevant precedent. Of course, no court

has or could establish a bright-line rule as to what constitutes a reasonable amount of time for

briefing a motion like this in a Social Security disability case. *See Burt*, 2011 WL 1325607, at

*3; *see also Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1134 n.1 (9th Cir. 2012)

("[T]he term 'routine' is a bit of a misnomer as social security disability cases are often highly

fact-intensive and require careful review of the administrative record, including complex medical

evidence."); *Magwood v. Astrue*, 594 F. Supp. 2d 557, 564 n.6 (E.D. Pa. 2009) ("Clearly there

can be no bright line rule regarding how much time is appropriate to spend per brief or per

case."). It is sufficient to note, however, that in Social Security disability cases with similarly

complex factual and procedural histories, courts have approved fee requests that are not

dissimilar to that at issue here. *See, e.g., Smith*, 843 F. Supp. 2d at 490 (finding that 55.15 total

hours billed was reasonable, in case where plaintiff's counsel's efforts involved briefing two

motions for summary judgment, reviewing the government's sur-reply brief on those motions,

defending the government's motion to alter judgment and briefing a motion for attorney's fees);
*Burt*, 2011 WL 1325607, at *1–4 (finding that when plaintiff's counsel spent 45.33 hours on the
matter, including "just over one hour per page" with regard to the pages in a brief in support of a
motion for summary judgment that were not copied from prior briefs, the amount of time spent
was not excessive or unreasonable, as the case involved "lengthy prior administrative
proceedings").[15]

For these reasons, the Court declines to further reduce Plaintiff's counsel's time spent
engaged in brief writing and legal research regarding the opening brief on the grounds that this
was a "routine" Social Security disability case.

### 3.      Reply Brief and Response to Sur-reply

#### a.      Reply Brief

The Commissioner next objects to the amount of time Plaintiff's counsel spent preparing
Plaintiff's reply brief.  The Declaration indicates that on February 9, 2011, February 10, 2011,
and February 11, 2011, Plaintiff's counsel spent a total of 12.5 hours preparing this brief.  (D.I.
33-1 at 2)  In examining objections to time spent on reply briefs in Social Security disability
cases, courts have considered factors including:  (1) the length of the brief; (2) whether its
content specifically addressed arguments in the Commissioner's opposition brief; and (3) the

---

[15]      *See also Bauer-Cromartie v. Astrue*, No. 07-1392, 2008 WL 5129897, at *1–2
(E.D. Pa. Dec. 5, 2008) (finding 47.66 total hours of attorney time to be reasonable, in case
involving three hearings before the ALJ prior to the district court proceedings, and where
plaintiff's briefs "show[ed] that plaintiff's counsel conducted a thorough review of the
administrative record and his briefing was competent and required by the issues before this
court"); *Walton*, 177 F. Supp. 2d at 364–65 (finding 53.6 hours to complete a 27-page appellate
brief reasonable, based on precedent and because "[w]hile the legal issues presented were not
complex, this case involved a detailed fact-specific record").

degree to which its content was merely a replication of the arguments set out in the plaintiff's opening brief. *See, e.g., Ongay*, 2011 WL 2457692, at *3 (finding plaintiff's reply brief "certainly necessary" due to the Commissioner's lengthy opposition brief but reducing time spent from 7 hours to 4 hours "given counsel's efficient use of previous work" in the reply brief); *Bohovich v. Astrue*, No. 3:06-CV-1710, 2008 WL 2914585, at *5 (M.D. Pa. July 24, 2008) (reducing time spent preparing reply brief to 6 hours from 9.20 hours because brief was only 3 pages long and most of the citations were cited previously in the opening summary judgment motion); *Highsmith*, 2006 WL 1582337, at *6 (declining to reduce the 6 hours spent on plaintiff's reply brief as it "specifically address[ed] arguments raised in the Commissioner's Motion for Summary Judgment").

In asserting this objection the Commissioner requests that the 12.5 hour total be reduced to 4.2 hours. (D.I. 34, Attachment A) It contends that this reduction is justified in part because the brief contained citations to "extra-record" evidence and raised arguments for the first time in relation to that evidence, in violation of Local Rule 7.1.3(c)(2). (D.I. 34 at 13 & Attachment A at 2) The evidence the Commissioner refers to includes: (1) a reference on page 6 of the brief (and the attachment of related documents as an exhibit) to the fact that one of the physicians who had examined Plaintiff was later the subject of disciplinary action regarding her license to practice medicine; and (2) references on page 10 of the brief to the allegedly high rate of denials of Social Security disability claims at the Dover (Delaware) Hearing Office. (*See* D.I. 22) The inclusion of these portions of the reply brief caused the Commissioner to file a 10-page sur-reply brief (D.I. 25), which in turn prompted Plaintiff to file a 3-page response to that sur-reply brief (D.I. 27).

In order to evaluate this objection, the Court need not decide whether the references at

issue amounted to "extra-record" evidence that it could not have considered, nor whether their inclusion in the reply brief violated Local Rule 7.1.3(c)(2). For these purposes, it is sufficient to note both that (1) there was a good-faith basis for the Commissioner to raise such objections, and (2) the Court did not find these references useful in wrestling with the legal issues at the heart of this matter, nor did it cite to them in its Report and Recommendation. Therefore, the Court agrees with the Commissioner's general assertion that time spent on these portions of the brief should not warrant significant credit in the fee calculus. It is worth noting, however, that the portions of the 10-page reply brief that contain these references amount to less than half a page of text, and were a very small part of the brief.

As to the remainder of the reply brief, the Commissioner is correct that a number of portions, particularly those sections relating to the amount of weight that the ALJ gave to various opinions of treating and non-treating physicians, utilize similar or identical language to that used in Plaintiff's opening brief. (D.I. 34 at 14) In light of this re-use of prior work, the Court agrees that the amount of hours allocated to work on the reply brief should be further reduced. *See Ongay*, 2011 WL 2457692, at *3. Yet there are a number of instances where the reply brief contains new content that responds directly to arguments made in the Commissioner's opposition brief, and does so in a way that helpfully reinforces (but does not mimic) the content of Plaintiff's opening brief. And overall, it is important to recall that this reply brief came in answer to the Commissioner's 47-page opposition brief—in light of that, it is understandable why a significant amount of pages (and time) were necessary to properly respond, either by re-purposing previously-used arguments or by adding in new ones. Taking all of this into account, the Court concludes that Plaintiff's counsel is entitled to reimbursement for some significant

portion of the time billed toward the reply brief.

For these reasons, the Court finds that the 12.5 hours requested for preparing Plaintiff's reply brief should be reduced to 8.5 hours.

### b.    Response to Sur-reply

The Commissioner next objects to the 3.9 hours that Plaintiff's counsel spent reading the the Commissioner's sur-reply and drafting a response. (D.I. 33-1 at 2) The Commissioner contends that these hours should be omitted from the fee award in their entirety because this amount of time is excessive for such a short response, and because the Commissioner only filed a sur-reply in light of Plaintiff's improper inclusion of "extra-record" evidence in her reply brief. (D.I. 34 at 14)

For the reasons set forth above, the matters discussed in the sur-reply and in the response to the sur-reply were, at a minimum, not central to the legal issues involved in the case (or to the content of the Court's Report and Recommendation). The Court also agrees that the total of 3.9 hours is excessive given the brevity of the sur-reply and Plaintiff's response. Accordingly, the Court reduces the time spent reviewing and responding to the sur-reply by two hours, from 3.9 hours to 1.9 hours.

### 4.    Miscellaneous Tasks

Lastly, the Commissioner argues that the following time entries be reduced (with the requested reductions in brackets):

| 5/18/10 | - | Review to see whether appeal is proper, prep filing materials, confer with client [from 1.50 hours to 1 hour] |
| 5/31/10 | - | Review order referring case, note to file and tickle [from 0.20 hours to 0.10 hours] |

21

| 7/26/10 | - | Review answer and tickle [from 0.30 hours to 0.20 hours] |
| 8/6/10 | - | Review order re: scheduling conference, calendar and note to file [from 0.30 hours to 0.10 hours] |
| 8/13/10 | - | Review Briefing Order and calendar, review file [from 0.20 hours to 0.10 hours] |
| 8/24/10 | - | Review docket status, recent entries and note to file re: reassignment [from 0.20 hours to 0.10 hours] |
| 7/2/12 | - | Prepare EAJA materials [from 2 hours to 1 hour] |

The sole basis proffered for this request is the Commissioner's belief that "the nature of these tasks did not require the amount of time requested." (D.I. 34 at 12)

The Court will reduce the time entries on May 31, 2010 and August 6, 2010 to 0.10 hours each—a total reduction of 0.30 hours. The Court agrees, even without the benefit of further articulation of the Commissioner's position, that the time allocated for these two entries is not reasonable. Both orders referenced in these entries are standard one-page orders that require minimal time to review, (D.I. 3, 8), and the other tasks referenced in these entries are also quickly accomplished.

The Court concludes that the remaining time entries in this category are reasonable. The two hours spent preparing the fee petition is certainly not excessive. *See, e.g., Magwood*, 594 F. Supp. 2d at 564 (reducing time spent preparing EAJA fee petition from 4 hours to 2 hours); *Bohovich*, 2008 WL 2914585, at *5 (awarding entire 5.7 hours of time spent preparing EAJA fee petition); *Highsmith*, 2006 WL 1582337, at *6 (awarding entire 2 hours spent preparing EAJA fee petition). Likewise, the Court does not find the May 18, 2010, July 26, 2010, August 13, 2010 or August 24, 2010 entries unreasonable on their face, and the Commissioner has not

provided specific arguments to persuade the Court otherwise.

**B.    Conclusion Regarding Reasonableness of Requested Fee Award**

Accordingly, the Court will award to Plaintiff an attorney's fees award in the amount of $8,262.00, representing 48.6 hours of attorney time billed at $170.00 per hour,[16] plus costs in the amount of $350.00. The payment shall be made directly to Plaintiff, subject to any offset to satisfy a pre-existing, qualifying debt that Plaintiff may owe to the United States. *Astrue v. Ratliff*, 130 S.Ct. 2521, 2524 (2010); *Ongay*, 2011 WL 2457692, at *4.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion is GRANTED. The Court will award Plaintiff $8,262.00, representing 48.6 hours of attorney time billed at $170.00 per hour, plus costs in the amount of $350.00. The fee award shall be paid directly to Plaintiff, subject to any offset to satisfy a pre-existing, qualifying debt that Plaintiff may owe to the United States.

Dated: January 23, 2013

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

[16]    This total results from subtracting 11.3 hours (for the reasons set forth in this Memorandum Order) from the starting point: the 59.9 hours actually expended by Plaintiff's counsel. As previously stated, Plaintiff's counsel acknowledged that at least 5 hours of 59.9 total hours worked should not be compensable "in an exercise of billing discretion." (D.I. 33-1 at 3 n.1) The Court's findings here have resulted in a conclusion that a greater number of hours, 11.3 hours total, should be reduced.